IN THE DISTRICT COURT OF THE UNITED STATES
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **GEOFFREY MORGAN,** ) | CIVIL ACTION NO.: 2:05-3399 |
| ) | CRIMINAL NO.: 2:02-845 |
| Petitioner, ) | |
| ) | |
| **vs.** ) | |
| ) | **ORDER AND OPINION** |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| Respondent. ) | |
| _____) | |

## **THE CRIME**

On July 18, 2001, the Advanced Auto Parts store on Sam Rittenberg Boulevard in Charleston, South Carolina was robbed at gunpoint of $6,826.54. A witness told police that he had been shopping in the store and noticed that the clerk seemed to be nervous about a black male customer who was also in the store. The witness bought a battery and went to the parking lot to install it in his car. While he was doing this, he noticed a car parked out in front of the store with a person in the driver's seat who appeared to be making an effort to conceal his face.

A few minutes later, the witness saw the same black male leave the store carrying a cooler. He got into the suspicious car and was driven away. The witness took down the license plate number and a description of the car. The witness then went to the front door of the store and began yelling but no one came to the door. As he was going back to his

1

car, he looked back and saw two employees at the front door who told the witness that an armed robbery had occurred. As the witness attempted to follow the robbers he saw a Charleston County policeman and gave him a description of the vehicle and the suspects.

The two employees were interviewed by police and gave identical descriptions of the event. They told officers that they became suspicious of the black male and approached him. The robber then pulled a black revolver out of his pants and threatened to kill them. The robber made the employees empty the cash registers and then forced them into a back room where the safe was located. The safe was open and the robber had the employees empty all the money into a cooler. He then told them to lie on the floor and not to move or he would kill them. Both employees lay there for a few moments until they heard someone yelling at the door.

The license plate on the suspect vehicle belonged to a blue Mercury Sable station wagon registered to a Jacob Morgan on Bengal Road. This matched the description of the car given by the witness. Officers obtained a search warrant for the Bengal Road address. Upon arriving at the house, they observed the suspect vehicle parked in the driveway. Geoffrey Morgan answered the door. While executing the search warrant, officers found a backpack which Geoffrey Morgan claimed to own. The backpack contained several rolls of U.S. currency folded on itself and wrapped with rubber bands as well as rolls of coins still in their wrappers. Officers also located twenty-four one dollar bills, a torn roll of nickels on the dresser, and forty-five dollars in Morgan's wallet. Various guns and ammunition were also found.

Officers called in a search dog to help search a room located over the garage. The dog located a flare pistol and ammunition in one of the dressers. Also in the dresser, officers found a .38 Police Special revolver with a long barrel. Under a cushion in a chair in the room, the canine found a loaded .9mm Star Interarms semi-automatic pistol. Morgan was then arrested.

## **THE PUNISHMENT**

On August 15, 2002, an Indictment was returned charging Geoffrey Morgan ("Petitioner") with violations of Title 18, United States Code, Sections 1951 (Hobbs Act), 924(c)(1)(A)(ii)(use and carrying of a firearm during and in relation to a crime of violence), 922(g)(1), and 924(a)(2)(felon in possession of a firearm).

On January 6, 2003, the Government filed a Notice of Enhanced Penalties as to petitioner. That same day, jury selection was held before the undersigned. On January 7, 2003, petitioner's jury trial began, and on January 10, 2003, a jury verdict was returned finding Morgan guilty on all counts.

On April 28, 2003, a sentencing hearing was held at which time a Motion for Downward Departure was made by the Government. On May 12, 2003, judgment was returned committing Morgan to the custody of the Bureau of Prisons for a term of two-hundred twenty-two months and a five year term of supervised release. Petitioner was also ordered to pay restitution in the amount of $3,413.27.[1]

---

[1]This amount was later reduced to $2,707.27.

On March 31, 2004, the Government filed a motion pursuant to Rule 35 to reduce Morgan's sentence. On April 5, 2004, the Rule 35 hearing was held and Morgan was resentenced to one-hundred eighty-six months imprisonment.

On April 13, 2004, petitioner filed a Notice of Appeal. On May 24, 2005, the Fourth Circuit Court of Appeals issued its judgment affirming the District Court's decision. *See* *United States v Morgan, 128 Fed. Appx. 318* (4th Cir. 2005).

On December 6, 2005, Morgan filed the instant motion pursuant to Title 28, United States Code, Section 2255.

## **ANALYSIS**

Morgan argues that his Sixth Amendment rights were violated and makes two claims of ineffective assistance of counsel alleging his trial lawyer failed to fully investigate and advise the court of the full nature of his cooperation with regards to his Rule 35 resentencing and his lawyer on appeal was ineffective for filing an Anders brief.

In order to prevail on a claim of ineffective assistance of counsel, petitioner bears the burden of showing that (1) counsel's performance fell below an objective professional standard of reasonableness; and (2) that counsel's deficiencies prejudiced his defense. *Strickland v. United States*, 466 U.S. 668, 687-92 (1984). When evaluating counsel's performance under the first prong of the *Strickland* test, this court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 680. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.

4

. . ." *Id*. at 689. *See also, Matthews v. Evatt*, 105 F.3d 907, 918-21 (4th Cir. 1997); *Fields v. Attorney General of Maryland*, 956 F.2d 1290, 1297-99 (4th Cir.), *cert. denied,* 506 U.S. 885 (1992); *Roach v. Martin*, 757 F.2d 1463, 1476 (4th Cir.), *cert. denied*, 474 U.S. 865 (1985); and *Hutchins v. Garrison*, 724 F.2d 1425, 1430, 1431 (4th Cir. 1983), *cert. denied*, 464 U.S. 1065 (1984). As the *Strickland* court observed:

> It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was reasonable. . . [E]very effort [must] be made to eliminate the distorting effects of hindsight. . .
> *Id*. at 689.

In order to prevail on the second prong of *Strickland*, petitioner "must show there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id* at 694. Both the Supreme Court and the Fourth Circuit have held that defendants bear the burden of proving prejudice, *Fields*, 956 F.2d at 1297, and if the defendant cannot meet this burden, then the performance prong of *Strickland* need not be considered. *Id.* at 1297. *See also*, *Strickland*, 466 U.S. at 697, and *Hutchins*, 724 F.2d at 1430-1431.

In the instant case, there is nothing in the record to show that Morgan's counsel was ineffective at either the sentencing or appeallate stage. In fact, Morgan not only benefitted from a downward departure at his original sentencing, but also received a Rule 35 afterward. Morgan's lawyer was more than effective by getting his client's sentence

5

reduced to one-hundred eighty-six months. As the Fourth Circuit noted in Morgan's appellate decision, "...the extent of a departure is left to the court's discretion under Rule 35(b)." 128 Fed. Appx. 318.

Morgan's claim of Ms. Hudgins ineffectiveness in filing an *Anders* brief must further fail because he cannot establish that the alleged failures were outside the range of competence demanded of attorneys in criminal cases. *See Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. The Fourth Circuit allowed Ms. Hudgins to file an Anders brief and under the law which governed at the time of petitioner's sentencing, Ms. Hudgins was not ineffective in her decision to file an Anders brief.

Morgan's claims in this case are nothing less than sour grapes by a convicted armed robber who thinks his sentence is too long. This court was not required to reduce his sentence even though the Government requested it to do so on two occasions, however, in light of the Government's motions and at the behest of Morgan's attorney, the court substantially reduced it.[2] No good deed goes unpunished.

**THEREFORE**, petitioner's motion is **DENIED**.

---

[2]The court would note that Morgan's original guidelines were offense level 32 and criminal history category VI. As such, his guideline range was 210-262 months on Count I and a mandatory consecutive 84 month sentence on Count II. Therefore, had his lawyer not convinced the Government to file a Motion for Downward Departure Morgan's **minimum** sentence would have been 294 months. Additionally, it has been this court's general practice to sentence defendants who have a criminal history category of VI to the upper end of the guidelines. If the court had followed its usual practice, Morgan's sentence, absent any motion by the Government, would in all likelihood have been 346 months.

_____
DAVID C. NORTON
UNITED STATES DISTRICT JUDGE

Charleston, South Carolina

April 3, 2006